# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MONTRELL POWELL, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-12-1937 |
| RONALD S. WEBER, et al., | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM

Pending is a motion to dismiss, or in the alternative, for summary judgment filed on behalf of defendants Warden Frank B. Bishop, Lt. Rodney O. Likin, Lt. Michael T. Malloy, and Ronald S. Weber. ECF No. 20. Plaintiff has responded. ECF No. 25. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the motion to dismiss, construed as a motion for summary judgment, will be GRANTED.

### Background

Powell, a self-represented inmate then housed at the Western Correctional Institution ("WCI"), initiated these proceedings alleging that defendants erroneously labeled him a member of the Security Threat Group ("STG") known as the Black Guerilla Family ("BGF"). Powell states that a sign was placed above his cell door flagging him as such. ECF No. 1.

In support of his claim he provides affidavits from four inmates who aver that staff at WCI place staff alert signs on segregation doors which include a computer generated photo and list gang affiliation. The inmates aver that they were improperly labeled members of a STG.

One inmate indicates he was successful in having the STG designation removed through the ARP process, another indicates he is in process of having the STG designation removed, and the others do not specify their efforts to have the designation removed. ECF No. 25.

Powell states that he filed ARP WCI#1066-12 on May 26, 2012 concerning the erroneous designation of him as a member of a STG. Powell has attached a copy of the ARP which states, "I was informed by Mr. Webb that I was flagged under BGF. I also informed Mr. Webb that this is not true and I will like to see proof ASAP and Mr. Webb told me to put in an ARP because he didn't have nothing to do with whoever flagged me." ECF No. 1. The ARP was dismissed on June 11, 2012, with a notation that "you are listed as a member of an STG and until that changes through the renunciation process you will remain listed as a member." ECF No. 1. Powell claims that on June 12, 2012, he wrote to correctional staff seeking to discuss the renunciation of gang affiliation process, but received no response. He appealed the dismissal of his ARP to the Commissioner but indicates he received no response. *Id.*

As a result of erroneous labeling, Powell alleges he has suffered from panic attacks, has difficulty eating and sleeping, and suffers thoughts and dreams about being killed. *Id.* Powell states that on May 26, 2012, he was taken to Weber, the mental health counselor. He advised Weber he was not a member of any gang and was feeling very depressed that he had been erroneously flagged. Powell alleges he did not receive any treatment for his complaints. *Id.*

Powell seeks damages as well as injunctive relief that he be transferred from the WCI region and seen by a certified mental health professional. He also asks that any notation that he is a member of a STG be deleted from his record. ECF Nos. 1 & 25.

Rodney Likin avers that at no time has gang information been placed on Powell's cell door, and that gang affiliation is confidential and not publicly disseminated. He further avers that all segregation cell doors have a computer generated picture of the inmate as well as a list of staff alerts such as medical and enemy alerts. Likin avers that the alerts are listed to facilitate the safety of inmates and staff. Likin avers that during the time in question Powell was confined in general population. ECF No. 20, Ex. 1.

Ronald Weber avers that he is employed as a Mental Health Professional Counselor Supervisor at WCI. Upon transfer to WCI, each inmate is assessed by WCI mental health staff to determine if mental health treatment is required. Additionally, each housing unit at WCI is assigned a mental health professional who responds to any inmate request for mental health services. An inmate may also access mental health services by writing a sick call slip. Weber further avers that "WCI has an open door policy towards providing mental health care to inmates." *Id.*, Ex. 2.

Powell's medical records reveal that prior to his incarceration at WCI, he was evaluated by a nurse practitioner on March 28, 2012, due to complaints that he felt stressed and could not sleep. He advised that he was stressed about being released in the near future. Powell was offered medication, Vistaril, but declined same. Other methods of coping with anxiety were discussed. He was diagnosed as suffering from adjustment disorder with anxiety. *Id.*, Ex. 3, p. 2.

Powell was transferred to WCI on April 16, 2012, and Weber met with Powell on April 20, 2012, to perform a mental health intake. Powell had no active AXIS I features and denied a history of mental health problems. *Id.*, Ex. 2, Ex. 3, p. 5-6.

On June 20, 2012, Powell submitted a self-referral to the Psychology Department. Amanda Tart attempted to interview Powell on July 17, 2012, regarding his request but Powell refused the visit. *Id.*, Ex. 3, p. 8-9. Weber avers he was on medical leave from May 1 until August 16, 2012, and did not work at WCI during that time. *Id.* Ex. 2.

Plaintiff submitted another self-referral to psychology on September 10, 2012, and was seen on October 1, 2012. *Id.*, p. 10-11. Powell reported he was feeling "stressed" and had difficulty sleeping. The therapist discussed ways to lower his stress. He advised the therapist that he was afraid "something would happen" because he had been flagged as a gang member but adamantly denied such an affiliation. The therapist discussed coping skills and Powell voiced his understanding simply stating "you're right." He had nothing else to discuss and was advised to write another request if he felt he needed assistance. *Id.*

Powell was released from confinement in May of 2013. ECF No. 27.

## Standard for Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a) which provides "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

4

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting then-Rule 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Liberty Lobby*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on

5

those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

A.  Failure to Protect

The gravamen of Powell's complaint is that his right to be free from cruel and unusual punishment has been violated due to prison officials' failure to protect him from a risk of harm due to their publicizing his gang affiliation. The Eighth Amendment does recognize this right. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994),

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id.* at 833 (internal quotations and citations omitted). To establish a failure-to-protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. *Id.* at 834.

Powell has failed to demonstrate serious or significant physical injury arising from defendants' alleged conduct. *See De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

6

Medical records show that while he submitted requests for mental health counseling in regard to feeling anxious about being attacked, he had been diagnosed as suffering from mild anxiety prior to the events about which he now complains. Moreover, he declined treatment on July 7, 2012, and after discussing ways to mitigate his anxiety on October 1, 2012, was deemed to need no further care and directed to follow up on an as-needed basis. Such objective evidence does not demonstrate a serious emotional injury arising from the alleged listing of Powell's STG affiliation.

Assuming, arguendo, Powell's claimed anxiety was deemed objectively serious, Powell has failed to satisfy the subjective prong of a failure-to-protect claim. Deliberate indifference in the context of a failure-to-protect claim means that a defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety.").

As noted, a prison official is deliberately indifferent when he possesses actual, subjective knowledge of an excessive risk of harm to the prisoner's safety and disregards it. *Farmer*, 511 U.S. at 837-39. There is simply no evidence before the court that defendants were deliberately indifferent to plaintiff's safety. Defendants deny that any inmate's STG designation is

7

disseminated. They specifically deny that anything was posted above plaintiff's door as alleged. While plaintiff provides affidavits from other inmates that their STG affiliations were posted above their segregation cell doors, it is notable that plaintiff does not make such an allegation regarding himself under oath. Rather, his affidavit generally indicates that what he says is true, and specifies that he is not a member of an STG. Plaintiff offers no evidence that the revelation of his gang affiliation actually occurred, nor does he forecast evidence he plans to introduce to establish that as fact. It is noteworthy that in Powell's ARP he claims he has been improperly identified as a member of the BGF but makes no mention that the information has been published on his cell door or to any inmates. To the contrary, Likin avers that such information has never been posted above plaintiff's door and that plaintiff was a general population inmate. Likin further avers that as a matter of policy the staff alerts that are posted on the segregation tier are posted to enhance security and that the gang affiliations are not publicly disclosed.

Taking plaintiff's allegation as true, that he was misidentified as a member of a STG, there is simply no evidence that his alleged gang affiliation was posted, nor is there any evidence to show that defendants appreciated a risk of harm to plaintiff. There is no evidence that defendants were aware that Powell's STG designation had been made public, nor any evidence that defendants made the required inference that plaintiff was in danger. Moreover, it is noted that a process was in place for review of the STG designation--a process plaintiff failed to fully exhaust. Plaintiff, as the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit evidence to support his claim, or to put the material fact of this

case--the failure to protect--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991).

B.  Injunctive Relief

"'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964)). An actual controversy must exist at all times while the case is pending. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). Where developments occur during the course of a case which prevent the court from being able to grant the relief requested, the case must be dismissed. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968). Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained..." *See Lewis v. Continental Bank Corp*, 494 U.S. 472, 480 (1990). "[O]ne such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (citing *Broughton v. North Carolina*, 717 F. 2d 147, 149 (4th Cir. 1983)). To the extent plaintiff seeks injunctive relief, his request has been rendered moot as plaintiff has been released from confinement.

C.   Denial of Psychiatric Care

To the extent plaintiff claims he was denied adequate psychiatric care, his claim also fails. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer*, 511 U.S. at 837.

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*,

10

511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F.3d 383 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Such disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Plaintiff's undisputed medical records reveal that upon his intake at WCI he was not suffering from an AXIS I disorder and there was therefore no need to refer him for further mental health care. Plaintiff later submitted a request for mental health care but refused treatment when he was called to be interviewed. Approximately one month later, he submitted another request for mental health care and received a consultation shortly thereafter. He discussed his concerns with staff and was advised on ways to mitigate his anxiety and told to follow up as needed with the mental health department. ECF No. 20, Ex. 3. In granting summary judgment to defendants, the court does not imply that plaintiff is not entitled to mental health care for his serious condition. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Plaintiff's assertion that Weber lacks the authority

11

and/or qualifications to treat him is unavailing. ECF Nos. 1 & 25. Plaintiff may not dictate whether treatment is provided to him by a mental health counselor, psychologist, or psychiatrist. He has not demonstrated exceptional circumstances to place his disagreement with medical staff into that narrow class of cases supporting an Eighth Amendment claim. *See Wright*, 766 F.2d at 849; *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970). Plaintiff has been evaluated and provided appropriate mental health care. Accordingly, defendants are entitled to summary judgment.

A separate Order will be entered granting defendants' motion for summary judgment.

DATED this 20 day of August, 2013.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
United States District Judge

12